IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2014

## DEMARIO THOMAS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-03938      James M. Lammey, Jr., Judge**

**No. W2013-01818-CCA-R3-PC  - Filed October 10, 2014**

The petitioner, Demario Thomas, appeals the denial of his petition for post-conviction relief, arguing that his guilty plea was unknowingly and involuntarily entered without the effective assistance of counsel.  After review, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., joined.  JEFFREY S. BIVINS, J., Not Participating.

Rosalind E. Brown, Memphis, Tennessee, for the appellant, Demario Thomas.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Glen Baity, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was charged with the first degree murder of Durell McVay.  After the first day of trial, the petitioner entered an <u>Alford</u> plea to second degree murder and was sentenced to twenty-three years at 100% in the Department of Correction.  On direct appeal, this court modified the petitioner's sentence to twenty-one years.  <u>See</u> <u>State v. Demario Thomas</u>, No. W2010-00949-CCA-R3-CD, 2011 WL 2698320, at *1 (Tenn. Crim. App. July 11, 2011), <u>perm. app. denied</u> (Tenn. Nov. 15, 2011).  In our opinion, this court provided the following summary of the facts supporting the petitioner's guilty plea:

On August 14, 2007, a gang-related altercation occurred outside a gas station

located across the street from Waldon Pointe Apartments in Memphis, Tennessee. While the [petitioner] was not present during this altercation, his younger brother, Donye Garrett, was present. During this altercation, Donye Garrett engaged in aggressive language and flashed gang signs to a group of men that included the victim. The gas station owner asked the men to leave and they complied. While this altercation was occurring, the [petitioner] was informed that his mother's apartment was being burglarized. After running to his mother's apartment armed with a weapon, he discovered that the apartment was not, in fact, being burglarized. Soon after he left his mother's apartment, his older brother, Michael Garrett, told him about the gas station altercation and also that Donye Garrett was at the apartment mailboxes alone.

Approximately twenty minutes later, the two groups of men from the gas station met in the apartment complex. Michael Garrett, the [petitioner]'s older brother, and another man began to fight when the victim and several other men arrived. Donye Garrett and the victim engaged in some "words" and then prepared to fight but, before they could do so, the [petitioner] fired three shots at the victim. All of the men except for the victim, who was lying on the ground, fled the scene. Police were called, and the victim was transported to the hospital where he was pronounced dead. The following day the [petitioner] went to the homicide office of his own accord, initially denying he shot the victim but later offering an admission.

Id.

On August 21, 2012, the petitioner filed a timely *pro se* petition for post-conviction relief. The petition was initially denied as untimely because the petitioner failed to indicate that application for permission to appeal to the Tennessee Supreme Court had been denied on November 15, 2011. However, the court subsequently determined that the petition was timely and, on April 1, 2013, an amended post-conviction petition was filed by appointed counsel.

The post-conviction court conducted an evidentiary hearing on July 3, 2013, at which the petitioner admitted that counsel discussed his sentencing exposure with him because he was pleading open to the court. However, he believed that he would receive a fifteen-year sentence given he was a first-time felon. He claimed that "[i]t wasn't explained like [I] could get twenty-five years for what [I] did." The petitioner admitted that he was not promised that he would receive a sentence of fifteen years but said that he was told "you should get a fifteen. You're a first-time felon. You don't have any reason to get anything more." He claimed that he would not have pled guilty had he known he could receive a sentence closer

to the maximum in the range.

The petitioner recalled being questioned by the trial court before the court accepted his guilty plea. He acknowledged that the transcript of the guilty plea hearing reflected that the court told him that he was pleading open to the court and that he faced a possible sentence of fifteen to twenty-five years. However, he claimed that he thought the court's statement meant "this [is] what the charge carries. [The court was] not saying this is what you will get if you sign this open plea."

Evelyn Scott, the petitioner's mother, testified that counsel told the petitioner that the range of punishment he faced for second degree murder was fifteen to twenty-five years. However, counsel said that "he'd probably do fifteen. But, you know, he said he couldn't do no more than seventeen." The petitioner was also not informed that he would have to serve 100% of his sentence. Scott acknowledged, however, that counsel never promised the petitioner that he would get a fifteen-year sentence and that it was clear to her that the petitioner could get more than fifteen years. Scott admitted that the transcript of the plea hearing showed that the court informed the petitioner that he faced a sentence between fifteen and twenty-five years and that it would be served at 100%.

The petitioner's trial counsel testified that the petitioner was charged with first degree murder and, before the trial, received an offer of twenty-five years to second degree murder. Counsel discussed the State's offer "a number of times" and eventually voir-dired the petitioner in court where the petitioner rejected the offer. Counsel said that he continued to attempt to negotiate a settlement in the days leading up to trial. He proposed to the petitioner to sign the guilty plea paperwork to a fifteen- or twenty-year sentence so that he could present it to the State for consideration, but the petitioner refused.

Counsel recalled that the State proposed a settlement to second degree murder after it had almost completed its case-in-chief. He explained that the policy of the court was that any plea made after the commencement of trial had to be an open plea. Counsel and his assistant counsel thoroughly explained to the petitioner that, because it was an open plea, he could face a sentence between fifteen and twenty-five years at 100%. Although it was an open plea, the State had indicated that it would recommend a sentence of twenty years to the court, but counsel informed the petitioner that "it was ultimately up to the judge what type of sentence he would receive." Counsel pointed to portions of the transcript from the plea acceptance hearing which clearly showed that the petitioner was informed of the range of punishment he faced and that, regardless of the State's recommendation on the sentence, the trial court could sentence him anywhere between fifteen and twenty-five years. Counsel was adamant that the petitioner was never promised a fifteen-year sentence.

Counsel stated that, prior to trial, the petitioner was hesitant "about pleading guilty in general." However, the petitioner ultimately decided to plead guilty because

> we had gone through a majority of the [S]tate's proof at trial. He had seen what a lot of the witnesses had said against him. He knew what our defense was; and he knew that the reality was, if he was convicted of first-degree murder, the only sentence he could receive was a life sentence, which was fifty-one years.
>
> Explaining that to him, talking to his family outside of the courtroom – also knowing that his own brother basically threw him under the bus and said he shot this individual for no reason.

Following the conclusion of the proof, the post-conviction court made extensive oral findings in denying the petition.

## ANALYSIS

On appeal, the petitioner argues that his guilty plea was unknowingly and involuntarily entered without the effective assistance of counsel.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S.

668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal

proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The petitioner asserts that his plea was unknowing and involuntary because counsel failed to "thoroughly explain and request the court to explain his sentencing exposure as a result of his guilty plea."

In denying the petitioner relief, the post-conviction court ruled, in part, as follows:

I do recall that I voir-dired [the petitioner] when we set this for trial initially indicating he would have to plead to the court – my usual litany of things I usually go through with each person who sets their case for trial; that I would not accept a negotiated plea agreement.

[The State and the defense] attempted . . . to come to me with a negotiated plea agreement, and I said I wouldn't accept it because it says here, "You have to plead to the court." . . . I don't know if it actually was on the record or they came to me and I said, no, I wouldn't take it; but that's the reason why it was a plea open to the court.

The record pretty much speaks for itself. I mean, all of this was on the record. [The State] talked about it. It was an open plea; what he was facing. [Counsel] did as well. And then I, of course, went over his rights with him, and I told him he was facing between fifteen to twenty-five years. I didn't say I was going to give him fifteen years. I was satisfied, at the time, that he understood that we were going to have a sentencing hearing, and it was up to me, especially after hearing what his counsel had to say and the prosecution, it was up to me to sentence.

. . . .

So, the allegation is ineffective assistance of counsel and [counsel] not telling him – apprising him of what he is really facing and what could really happen. To be honest, I don't believe a single word [the petitioner] had to say – not a single word – especially compared to [counsel] who is a reputable attorney who did his best to represent this man; and now he is accused of being a liar. I don't think that's appropriate because I believe [counsel] – I believe

-6-

it transpired the way he said it did and not the way [the petitioner] did.

The record demonstrates that counsel, the State, and the trial court explained the ramifications of pleading guilty in an open plea to the petitioner, specifically that the court could reject the State's recommendation for a twenty-year sentence and sentence him to the maximum in the range. Moreover, the petitioner acknowledged at the post-conviction hearing that neither counsel nor the State had promised him a fifteen-year sentence by pleading guilty. Based on the totality of circumstances, we conclude that the petitioner entered a knowing, voluntary, and intelligent plea and failed to prove that counsel performed deficiently or that any deficiency affected the knowing and voluntary nature of his plea.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we conclude that the petitioner has failed to meet his burden of showing that he received ineffective assistance of counsel or that his guilty plea was unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE